# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| EDWARD EUGENE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-121 |
| | ) | |
| JOHN T. WELCHER, | ) | |
| OFFICER JOHNSON, | ) | |
| CORPORAL BOYLE, and | ) | |
| SGT. WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Edward Eugene Davis has filed this 42 U.S.C. § 1983 case alleging that he was denied adequate medical care while incarcerated at the Chatham County, Georgia Sheriff's Complex. *See generally* doc. 9. The Court previously directed him to respond and show cause why he failed to disclose his full litigation history. *See* doc. 5. He did not respond to that direction, but moved to amend his complaint. *See* doc. 6. The Court granted him leave to amend his Complaint, doc. 8, and his Amended Complaint appears to disclose his litigation history. *See* doc. 9 at 2-3. The Court will not, therefore, recommend dismissal of this case as a sanction for Davis' omission or his noncompliance with the

show-cause order. Instead, it will proceed to screen his Amended Complaint, pursuant to 28 U.S.C. § 1915A.[1] It will also address Davis' motion to appoint counsel, doc. 14, and his motion to amend, doc. 13.

## I.  Motion to Appoint Counsel

Davis requests that the Court appoint counsel to represent him. *See* doc. 14. He states that he has been unable, both financially and practically, to obtain representation. *See id.* at 1. He also states that his incarceration and lack of knowledge of procedural rules impedes his ability to litigate his case. *Id.* at 1-2. He finally states that he "is under medicinal Mental Health treatment . . . ." *Id.* at 2.

Davis has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent

---

[1] Section 1915A requires dismissal of any claim that: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A. *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001). Allegations in the complaint are, therefore, taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n. 1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "[T]his Court has repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021). Similarly, courts have found that a plaintiff who appears able to conduct his case, despite allegations of mental illness or disability, is not entitled to appointed counsel in a civil case. *See Kidwell v. Wagoner*, 2011 WL 13175897, at *1 (M.D. Fla. Feb. 11, 2011).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs

help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). As discussed more fully below, Davis has presented "the essential merits of his position" to the Court. While the Court finds that his allegations are not sufficient to sustain his claim, the defects are legal. There is no apparent ambiguity in his Complaint. The facts as presented do not show any "exceptional circumstance" that warrants appointment of counsel. Gallop's motion is, therefore, **DENIED**. Doc. 14

## II. Screening

The factual background of Davis' Amended Complaint is straightforward. He alleges that Defendant Johnson directed him to relocate to an upstairs cell. Doc. 9 at 5. He informed Johnson that he "had medical issues that made traversing stairs quite difficult . . . at times." *Id.* He alleges that Johnson responded, "sharply[,] that if [he] did not have a medical profile," he would be relocated. *Id.* He does not allege that he had a "medical profile," or that he told Johnson that he did. *See id.* While he was moving his belonging from his previous cell to his

new upstairs cell, he "became dizzy" and woke up on the floor below the stairs. *Id.* He does not allege how far up the stairs he had progressed when the fall occurred. *See id.*

After the fall, two other officers, defendants Boyle and Walker, directed him to get up, allegedly using "demeaning" language and suggesting his fall was "fake." Doc. 9 at 6. When he told them he was unable to get up, "[m]edical was called," and he "was roughly picked up and placed awkwardly in a wheelchair." *Id.* He was in "extreme pain" due to being placed in the wheelchair. *Id.* He was then taken "to medical." *Id.* Once he arrived, he "received completely callous treatment." *Id.* A nurse, who he does not identify by name, told him he "could get a bottom bunk profile . . . if [he] sat up, signed some papers and returned to [his] assigned unit (building)." *Id.* He indicates that, in response, he told her that he "couldn't get up." *Id.* .

He was removed from the wheelchair by "staff," and "placed on a flat board." Doc. 9 at 6. He was "admitted into the infirmary," but was not provided with any pain medication while he waited to see the doctor. *Id.* He alleges that he continued to experience "intense pain," but concedes that he "received some relief," "through [his] spiritual and

meditative prayer practices." *Id.* at 7. He saw a doctor, also unidentified, the following day, and "received some aspirin." *Id.* He "was housed in medical for nearly two days." *Id.*

Davis' Amended Complaint identifies Sheriff John T. Wilcher as a defendant, but does not include any substantive allegation that Wilcher participated in, or was even aware of, the events at issue. *See generally* doc. 9. It is well-settled that "[s]ection 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*." *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). Rather, "[a] supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity." *Id.*

> A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the

>subordinates would act unlawfully and failed to stop them from doing so.

*Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008). Davis does not allege any "widespread abuse," and has not pointed to any custom or policy, or other direction from Wilcher, related to the conduct underlying his complaint. His claim against Wilcher, therefore, fails.

Many of Davis' allegations contend that the defendants were negligent and "unprofessional." *See* doc. 9 at 8. Section 1983 simply cannot be used to bring a negligence-based tort suit in federal court.[2] Even read most charitably, Davis' allegation that jail staff were not sufficiently sensitive to his injury sounds in negligence rather than the "criminal recklessness" required to support a § 1983 claim. *Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994). To assert a § 1983 claim, Davis must allege not only that he was exposed to "a substantial risk of serious harm" but also that the responsible prison officials acted with "deliberate indifference" to that *known* risk. *Id.* at 834. *Farmer* defined deliberate indifference in terms of the subjective recklessness used in the criminal law: "a prison official cannot be found liable under the Eighth

---

[2] *See generally Daniels v. Williams*, 474 U.S. 327, 336 (1986) (prison official's negligence in failing to protect inmate from harm does not give rise to a cause of action under § 1983).

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Negligence, which arises when a person fails to live up to an *objective*, reasonable-man standard of conduct, falls far short of this *subjective* standard. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (explaining that subjective component of deliberate indifference requires more than even gross negligence).

Prison officials' deliberate indifference to "an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 972, 1004 (1976)); *see Farmer*, 511 U.S. at 832-33 (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia*, necessary medical care). A prisoner's mere disagreement with the type of medical treatment he receives, however, is insufficient. *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have

desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle,* 429 U.S. at 107 ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Even if the treatment an inmate receives was negligent, that's not enough to support a § 1983 claim. *See, e.g. Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.").

Davis alleges that, despite the defendants' lack of compassion, he was quickly evaluated by medical staff after his fall. When he protested that he couldn't get up, he alleges that officers called "medical" and transported him there in a wheelchair. Doc. 9 at 6. He, again, objects to a nurse's attitude, but concedes that he "was admitted to the infirmary to await seeing a doctor," who he saw the next day. *Id*. at 6-7. His disagreement with the course of treatment provided, or the manner in which treatment was provided, and vague allegations that it was

inadequate, without more, does not state a claim of deliberate indifference.³ *See, e.g., Hamm,* 774 F.2d at 1575; *Holtzclaw v. Morales*, 2016 WL 4925786 at * 2 (S.D. Ga. Sept. 14, 2016). His medical-treatment claim, therefore, fails.

Davis contends that he "had been seeking a bottom bunk profile for approximately a month before [his] falling incident." Doc. 9 at 7. That allegation might be charitably construed to allege that some unidentified members of the prison staff were deliberately indifferent to a known risk. Davis' allegations, however, fall far short of asserting the level of culpability required by the Eighth Amendment—actual, subjective awareness of a substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 840 ("Eighth Amendment liability requires consciousness of a risk"); *id.* at 841 ("deliberate indifference serves under the Eighth

---

³ Davis' Amended Complaint is also not entirely clear about what his medical need was. In many cases, the general pain suffered after a minor fall is not a "serious medical need" sufficient to support a § 1983 deliberate indifference claim. *See Young v. Holmes,* 2009 WL 2914188, at *3 (S.D. Ga. Sept. 3, 2009); *see also Burley v. Upton*, 257 F. App'x 207, 211 (11th Cir. 2007 ("[L]ower back pain is not the type of serious medical condition this circuit requires."); *Martin v. City of New York*, 2012 WL 1392648, at *9 (S.D.N.Y. Apr. 20, 2012) ('bodily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation). The fact that Davis expressly alleges that his pain abated in response to his "spiritual and meditative prayer practices," doc. 9 at 7, suggests that it was not sufficiently serious to support a deliberate indifference claim. The lack of any allegation that he was diagnosed with any actual injury also supports the inference that there was no "serious medical need."

Amendment to ensure only that inflictions of punishment carry liability"); *id.* at 842 ("a prison official who was unaware of a substantial risk of harm to an inmate may . . . [not] be held liable under the Eighth Amendment [even] if the risk was obvious and a reasonable prison official would have noticed it").  He has, therefore, failed to state a viable claim, under the Eighth Amendment, based on a failure-to-protect theory.

## III.  Motion to Amend

Davis has also filed a "Motion of Addendum to Amendment" that explains that he inadvertently omitted a page when he filed his Amended Complaint.  *See* doc. 13.  Since he has already amended his complaint once, he requires the Court's leave before amending again.  *See* Fed. R. Civ. P. 15(a)(2).  The Rules instruct that "[t]he court should freely give leave when justice so requires."  *Id.*  Accordingly, the Court **GRANTS** Davis' motion to amend.  Doc. 13.  It will, therefore, proceed to screen the additional allegations in that amendment.  *See* 28 U.S.C. § 1915A.

The additional page seeks, first, to assert claims against "Chatham County as the employer of Sheriff John T. Wilcher, Officer Johnson, Corporal Boyle, Sgt. Walker and the medical nursing staff at the Chatham County Sheriff's Complex" arising from the other claims Davis'

asserts. *See* doc. 13 at 3. As discussed above, an employer cannot be sued under § 1983 based on a theory of vicarious liability. *See also Jenkins v. Corizon Health Inc.*, 2020 WL 5492658, at *5 (S.D. Ga. Sept. 10, 2020). A local government entity might be liable under § 1983 based on its adoption of an unconstitutional "custom or policy," but Davis does not allege any "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (quotation marks and citation omitted). His claim against Chatham County, therefore, fails.

His amendment also seeks to hold the previously named defendants liable "in their 'individual capacities." Doc. 13 at 3. Generally, speaking "individual capacity" claims are distinguished from "official capacity" claims. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Id.* (internal quotation marks, citation, and footnote omitted). The claims against the individual defendants, other than Sheriff Wilcher, analyzed above assume that those defendants are sued in their individual capacities. For the reasons

explained above, therefore, to the extent that the amendment added any claims at all, those claims also fail.

## IV. Conclusion

In summary, the Court **GRANTS** Davis' Motion to Amend, doc. 13, and **DENIES** his Motion to Appoint Counsel, doc. 14. The Court **RECOMMENDS** that his Amended Complaint be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b).[4]

Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects an average monthly balance of $68.00 over the six-month period prior to the date of his Prison Account Statement. Doc. 11. He therefore owes a $13.60 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Furthermore, Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to

---

[4] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within fourteen days of service, *see infra*, affords him an opportunity to resuscitate his case. He may also submit a Second Amended Complaint during that period, if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163, at *2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503, at * 1 (W.D. Mich. Jan. 19, 2011)).

his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[5]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

---

[5] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 14th day of February, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA