# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| EDWARD EUGENE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-121 |
| | ) | |
| JOHN T. WELCHER, | ) | |
| OFFICER JOHNSON, | ) | |
| CORPORAL BOYLE, and | ) | |
| SGT. WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

The Court previously recommended that *pro se* plaintiff Edward Eugene Davis' Amended Complaint should be dismissed. *See* doc. 15. Davis timely objected to that Report and Recommendation. Doc. 17. His objection did not identify any defect in the Court's analysis, but he has also submitted a proposed Second Amended Complaint that expands upon the allegations previously analyzed. As explained more fully below, the Court construes Davis' "objection" as a motion to amend his Complaint, which is **GRANTED**. Since his Second Amended Complaint supersedes his Amended Complaint, the recommendation of dismissal is

1

**VACATED**.  Doc. 15, in part.  The Court, therefore, proceeds to screen the Second Amended Complaint.  28 U.S.C. § 1915A.

## I.  Motion to Amend

Davis' objection to the undersigned's Report and Recommendation does not, in fact, object.  *See* doc. 17 at 1.  Instead of pointing to a defect in that recommendation, Davis asks that the Court "accept the enclosed Second Amended Complaint as plaintiff's new action."  *Id.*  The Eleventh Circuit has instructed that the "[l]iberal construction," afforded to *pro se* pleadings, "means that federal courts must sometimes look beyond the labels used in a *pro se* party's [pleading] and focus on [its] content and substance . . . ."  *Torres v. Miami-Dade Cnty, Fla.*, 734 F. App'x 688, 691 (11th Cir. 2018).  Davis' request that the Court "accept" his Second Amended Complaint is most plausibly construed as a motion to amend, pursuant to Federal Rule of Civil Procedure 15.  *See* Fed. R. Civ. P. 15(a)(2).

The Federal Rules permit a plaintiff to amend his complaint once as a matter of course.  *See* Fed. R. Civ. P. 15(a)(1).  Davis has previously amended at least once.  *See* doc. 9 (Amended Complaint); *see also* doc. 13 (Addendum to Amendment).  Subsequent amendments require leave of

court, but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has explained that "[i]n the absence of any apparent or declared reason . . . the leave sought [to amend a complaint] should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Since this case has not progressed beyond the pre-service screening stage, the Court can discern no reason not to permit Davis to amend his complaint. His request to file his Second Amended Complaint is, therefore, **GRANTED**.

## II.   Motion to Appoint Counsel

In addition to requesting that the Court accept his amended pleading, Davis' objection also states that he "renews his Motion for Appointment of Counsel . . . ." Doc. 17 at 1. The Court previously explained that appointment of counsel in a civil case is discretionary, and appropriate " 'only in exceptional circumstances.'" *See* doc. 15 at 2-3 (quoting *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014)). As the Court noted there, Davis' pleadings show that he is capable of presenting his position. *See id.* at 4. That conclusion is bolstered by his ability to respond to the defects the Report and Recommendation identified in his prior pleading, as discussed more fully below.

Accordingly, the Court finds that there are no "exceptional circumstances" warranting appointment of counsel in this case. Davis' renewed motion is, therefore **DENIED**.

## III.   Report and Recommendation

The analysis in the prior Report and Recommendation was based on the allegations of the Amended Complaint, as supplemented. *See* doc. 15 at 1-2, 11-13. "Generally speaking, an amended pleading supersedes the original pleading; and the original pleading is considered abandoned." *Nassar v. Nassar*, 853 F. App'x 620, 621 (11th Cir. 2021) (citing *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)). Since the previous versions of plaintiff's pleadings are superseded, the Court's analysis, and dismissal recommendation, are moot. Accordingly, to the extent that the Report and Recommendation recommended that Davis' case be dismissed, it is **VACATED** as moot. Doc. 15, in part.

As the Court previously summarized, *see* doc. 15 at 4-7, Davis' allegations begin with a fall down the stairs. *See* doc. 16 at 5. He alleges that one of the defendants, Officer T. Johnson, directed him to move from one cell to another. *Id.* The second cell "was on the upper tier of the

cellblock." *Id.* He informed Officer Johnson that he had "medical issues" that "made traversing stairs quite difficult . . . at times." *Id.* He also asserted that his "medical issues" warranted a "lower level bottom bunk" assignment. *Id.* He expressly alleges, however, that he "was waiting to see a doctor about receiving a lower level bottom bunk profile," necessarily implying that he did not have such a profile at the time. *Id.* Johnson then "explained . . . that if [he] didn't already have a medical profile," he would be required to relocate. *Id.* "[O]n [his] second trip . . . upstairs," Davis fell from near the top of the stairs to the bottom. *Id.*

After his fall, Davis alleges that two other defendants, Corporal Boyle and Sergeant Walker, arrived. Doc. 16 at 6. He alleges that they were "demeaning," and accused him of faking the fall. *Id.* When he informed them that he was hurt and unable to get up, they "roughly" and "awkwardly" put him in a wheelchair. *Id.* He was then taken to the infirmary. *Id.*

When he arrived in the infirmary, he was seen by "senior nurse Deborah Sylvester." Doc. 16 at 6. Sylvester allegedly stated that "she thought the issue [of Davis' request for a bottom-bunk assignment] was previously addressed as she had seen [his] message on the jail kiosk." *Id.*

Unidentified "staff nurses along with Corporal Boyle and Sgt. Walker attempted to move [him] from the wheelchair . . . ." *Id.* In response to Davis' requests to lay flat, he was "placed on a flat board." *Id.* He was then "admitted into the infirmary" to wait to be seen by Dr. A. Vlasenko. *Id.* He also alleges that he was "wheeled to an infirmary room" and "placed into a plastic bed . . . ." *Id.* It is not entirely clear how that movement was related to his placement on the "board."

While he was in the infirmary, Davis alleges that he was not provided with any pain medication. Doc. 16 at 7. He alleges that he found it difficult to move for several hours. *Id.* He was, however, able to gain some remission from his pain by "invok[ing] the power of [his] spiritual and meditative prayer practices." *Id.* After he was examined by the doctor the following morning, he was provided with "plain aspirin" later that afternoon. *Id.* He remained in the infirmary for several days, where he had "bloodwork" and x-rays. *Id.* He objects that "Dr. A. Vlasenko refused to order an MRI," despite his requests. *Id.*

Although the chronology is ambiguous, Davis alleges that, at some point, a nurse responded to his requests for a bottom-bunk profile. Doc. 16 at 8. He explains that "kiosk medical files" reflect that he informed

6

"medical" that his psychiatric medications caused side effects, including vertigo and sleep disturbances, that made him "nervous" about climbing stairs and sleeping in an upper bunk. *Id.* He alleges that he now has "a permanent bottom bunk, lower level profile which is further proof that the special need existed." *Id.* at 9.

Finally, Davis alleges that his treatment by jail staff has resulted in additional health problems. Specifically, he alleges that "humiliat[ion] by jail staff and . . . substandard medical treatment" have cause "mental anguish as well as emotional distress," which, in turn, have resulted in weight gain, high blood pressure, and, perhaps, other general cardiovascular symptoms. *See* doc. 16 at 9. He also alleges that "[t]he added stress that [he has] been forced to function under since [his] fall has caused [his] depression and anxiety to increase greatly . . . ." *Id.* at 10.

## A.    Sheriff Wilcher and Chatham County

The previous Report and Recommendation pointed out the "well-settled" principle that "[s]ection 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*." *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014)

(citation omitted); *see* doc. 15 at 6.  Davis' Second Amended Complaint is explicit in asserting Sheriff Wilcher's liability based solely on his supervisory role at the jail.  Doc. 16 at 10.  The Second Amended Complaint, therefore, fails to state a claim upon which relief can be granted against Sheriff Wilcher.  Davis' claim against Sheriff Wilcher should be **DISMISSED**.

Davis also names Chatham County as a party defendant.  *See* doc. 16 at 10.  Like has claim against Sheriff Wilcher, he expressly alleges that the County is liable as "the municipality employing," the other defendants.  *Id.*  While a county may be sued under § 1983, such a suit requires a showing that a custom, pattern, or practice of the county resulted in the deprivation of plaintiff's constitutional rights.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).  A county cannot, however, be held vicariously liable for the actions of its officers or employees.  *Id.* at 691.  Davis alleges no custom, pattern, or practice of Chatham County in his Second Amended Complaint.  Other than the express assertion of its vicarious liability, he does not mention it at all.

*See generally* doc. 16.  His claim against the County, therefore, should be **DISMISSED**.

### B.    Deliberate Indifference to Serious Medical Needs

Liberally construing Davis Second Amended Complaint, the majority of his allegations assert that various defendants were deliberately indifferent to his medical needs.  To offend the Eighth Amendment,[1] a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury.  *Goebert*, 510 F.3d at 1326.  Whether a serious medical need existed is an objective standard.  *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011).  However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  To

---

[1] Davis now alleges that he is a pretrial detainee.  *See* doc. 16 at 11.  Claims by pretrial detainees are technically governed by the Fourteenth Amendment, not the Eighth.  *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  "However, the standards under the Fourteenth Amendment are identical to those under the Eighth."  *Id.* (citation omitted); *see also Thomas v. Bradshaw*, 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022) (same).

allege deliberate indifference, a plaintiff must plead facts sufficient to show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal citations and quotation omitted).

A prisoner's mere disagreement with the type of medical treatment he receives, however, is insufficient. *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle,* 429 U.S. at 107 ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Even if the treatment an inmate receives was negligent, that's not enough to support a § 1983 claim. *See, e.g. Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical]

10

negligence or malpractice do not rise to the level of constitutional violations.").

Davis alleges, at most, negligence or disagreement with the type of treatment he received.[2]  He expressly alleges that, although they were "demeaning," Corporal Boyle and Sgt. Walker took him directly to the infirmary after his fall.  Doc. 16 at 6.  Once he got to the infirmary, he expressly alleges that he received "treatment," albeit "callous." *Id.*  When he asked to be allowed to lay flat, staff placed him on a "flat board." *Id.*  Although he was uncomfortable during the night, he was able to relieve his pain through "the power of [his] spiritual and meditative prayer practices." *Id.* at 7.  Despite his allegation that he did not receive "any real treatment," he alleges that he was given aspirin, had blood tests, and had x-rays taken. *Id.* Finally, although he alleges ongoing health issues, which he contends are related to the injuries he suffered, he expressly alleges that he is receiving treatment for those issues. *See id.* at 9.  At

---

[2] As the Court previously noted, "the general pain suffered after a minor fall is not a 'serious medical need' sufficient to support a § 1983 deliberate indifference claim." Doc. 15 at 10 n. 3 (citations omitted).  Davis' amended allegations remain ambiguous as to whether the injury he suffered from the fall could constitute a "serious medical need."

most, those allegations implicate negligence or medical malpractice, they do not allege that any defendant was deliberately indifferent.

Davis Second Amended Complaint can also be charitably construed to allege that the failure to more promptly assign him a lower bunk constituted deliberate indifference to his serious medical needs. *See, e.g.,* doc. 16 at 8. The Eleventh Circuit has recently affirmed that failure to accommodate a "bottom bunk" profile does not violate the Eighth Amendment, even when that "profile" has been prescribed by medical staff at a previous facility. *See Smith v. Wood*, 2021 WL 4452526, at *4 (11th Cir. Sept. 29, 2021). It has also expressly held that "failure to order a bottom-bunk pass . . . [does] not rise above the level of mere negligence . . . ." *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013). As this Court has recently explained, "case law indicates that a failure to honor a bunk profile does not amount to deliberate indifference." *Timmons v. Martin*, 2021 WL 1603614, at *6 (S.D. Ga. Mar. 5, 2021) (collecting cases). Davis' allegations concerning defendants' failure to either assign him a bottom-bunk profile promptly,

or honor such a profile before it was actually assigned, fail to state a claim.

Accordingly, Davis' claims that any defendant was deliberately indifferent to his serious medical needs should be **DISMISSED**.

### C.   Verbal Abuse

Davis also strenuously objects to the demeanor of various defendants throughout his experience.  He notes that they were "demeaning," "sarcastic," "disrespectful," "abusive," that he was "humiliated" and "ridiculed," by jail staff.  *See* doc. 16 at 5-11.  However, verbal taunting, even if it is egregious, does not violate the Constitution. As the Eleventh Circuit has recognized " 'verbal taunts . . .however distressing' do not violate a prisoner's constitutional rights under the Eighth Amendment."  *In re Eric Watkins Litig.*, 829 F. App'x 428, 431 (11th Cir. 2020) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989)).  To the extent that Davis asserts a claim based on any defendant's disrespectful language, his claim should be **DISMISSED**.

## IV.   Conclusion

In summary, the Court **GRANTS** Davis' Motion to Amend, and **DENIES** his Motion to Appoint Counsel.  Doc. 17.  To the extent that the

Court's prior Report and Recommendation recommended dismissal of Davis' Amended Complaint, it is **VACATED** as moot.  Doc. 15, in part. The Court **RECOMMENDS** that his Second Amended Complaint be **DISMISSED** for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 17th day of May, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA